1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   BRENT KENNETH TYLER,                    No. 2:07-cv-00367 JCW

12              Petitioner,                   ORDER
             vs.
13
     DARRAL G. ADAMS,
14
                Respondent.
15   _____

16

17        Tyler, a state prisoner, filed a petition for writ of habeas corpus pursuant to

18   28 U.S.C. § 2254, challenging his sentence of 25 years to life, imposed pursuant to

19   his guilty plea of one count of penetration with a foreign object with

20   enhancements admitted for committing that crime during a burglary and involving

21   binding the victim.

22        I have reviewed the petition, the respondent's answer, the traverse, and all

23   supporting documents.  I hold that Tyler is not entitled to the relief requested and

24   order that the petition be denied.

25

26

1

**I.**

The following is a summary of the facts, found by the California Court of Appeal in its opinion, which in turn referred to the transcript of the preliminary hearing and probation report:

> [Tyler] was the former boyfriend of the victim. Since their breakup, [Tyler] had mentioned to the victim that he was concerned for her safety, and he called her on the night of the offense to inquire about her welfare and to verify that she was continuing to house-sit in Wilton. When the victim returned to the residence that night, she was confronted by an individual (defendant) wearing a ghoulish Halloween mask and armed with a handgun. Defendant handcuffed and blindfolded the victim, pulled her into a bedroom and pushed her down onto a bed. After ransacking her purse, defendant tied the victim's legs with plastic zip ties.
>
> The victim heard defendant leave the bedroom several times, go outside through the sliding glass door, and then return a short while later. During several of those absences, defendant tried to call the victim on her cellular phone, and she heard defendant leave two messages on the answering machine at the residence. In one message, defendant stated he felt something bad might happen to the victim. In the second, he said he was going to drive to the residence.
>
> During one of defendant's absences, the victim loosened the ties on her feet, got up, and locked herself in a bathroom. When defendant returned, he kicked the door until it broke open. Defendant made the victim lie down on the bed again, bound her with zip ties and tape, unzipped her sweater, and cut open her T-shirt and bra. Defendant removed the gloves he was wearing, and rubbed the victim's breasts and nipples with both hands. He then pulled the victim's pants and underwear to her knees, forcibly spread her legs, inspected her, inserted a cylindrical object into her vagina, and rocked it back and forth. Defendant also nuzzled the victim's face, neck, chest and thighs with the muzzle of the handgun. Defendant then turned the victim over, rubbed her buttocks, removed the handcuffs, bound her hands and legs with zip ties, covered the victim's face with pillows, and departed with the victim's car keys and $10 from her purse. Defendant drove the victim's car to another location in Wilton and abandoned it.
>
> The victim managed to free herself enough to call her mom for help, and to hop to the bushes behind the residence in case the assailant returned. Defendant arrived at the residence shortly after the victim's father, but left after crime scene investigators arrived and questioned him. Officers surveilled defendant drive to a nearby road, where he threw a backpack into the ditch. The backpack was later found to

1   contain several items used during the crime, including a pellet
    handgun that closely resembled an authentic handgun.
2
    During a search of defendant's residence, his 15-year-old sister stated
3   that defendant owned a pellet gun and showed investigators the box
    where he kept it.  The serial number on the box matched the serial
4   number on the pellet gun recovered from the backpack that defendant
    had abandoned in the ditch.
5
    Defendant's sister also told investigators that defendant had worn a
6   Halloween mask the preceding Sunday and asked her whether she
    could tell if it was him through the mask.
7
    Following his arrest, advisement and waiver of rights, defendant
8   admitted that he was the perpetrator.

9   [Lodged Doc. 4, Jan. 9, 2006, Opinion of the California Court of Appeal, Third

10  Appellate District, Case No. C047993 (hereinafter Cal. App. Op.) at 2-4.]

11        The following summary of procedural background is also taken from that

12  opinion:

13  Defendant was charged by information with single counts of burglary
    (§ 459 – count one), unlawfully violating the personal liberty of
14  another by violence, menace, fraud or deceit (§ 236 – count two),
    penetrating the genital opening of another by force, violence, duress,
15  menace, or fear of immediate and unlawful bodily injury (§ 289, subd.
    (a)(1) – count three), robbery (§ 211 – count four), vehicle theft (Veh.
16  Code, § 10851, subd. (a) – count five), and six counts of willful and
    unlawful touching of the intimate part of another (§ 243.4, subd. (a) –
17  counts six through eleven).

18  As to count three, the information also alleged that the crime occurred
    during a burglary (§ 667.61, subds.(d)(4) & (e)(2)), defendant
19  personally used a dangerous or deadly weapon (subd. (e)(4)), and he
    tied or bound the victim (subd. (e)(6)).  As to all counts except one
20  and three, the information alleged that defendant personally used a
    deadly or dangerous weapon within the meaning of section 12022,
21  subdivision (b).

22  In exchange for dismissal of the other counts and enhancements,
    defendant pled guilty to count three (§ 289, subd. (a)(1)) and admitted
23  that the offense occurred during the commission of a burglary
    (§ 667.61, subd. (e)(2)) and that he had tied or bound the victim
24  (subd. (e)(6)).  Defendant stipulated to a prison term of 25 years to
    life.
25
    At sentencing, defense counsel did not contend the sentence was
26  unconstitutional.  He simply observed that the sentence was

1   "inappropriate" in light of defendant's youth and absence of a
2   criminal record.  Counsel stated: "This is a terrible situation, Your
    Honor, there is no good result [that] can come out with these kinds of
3   circumstances, but it is troubling that our society has decided to take
    somebody who is 19 years old and sentence them to basically life in
4   prison.  There are very few people who receive parole from a 25
    years-to-life sentence.  Perhaps in 20 years that may change.  But for
5   the conduct, actual conduct itself 11 years maximum upper term.  The
    enhancements are the things that give it the 25 to life.  And it's my
6   position that that's inappropriate at sentencing.  This is what we
    bargained for, this is what we're willing to accept, but I do want the
7   court and the record to reflect that I think it's an entirely inappropriate
    sentence to have a person committed and their life basically
8   warehoused when, in fact, there is no probation available.  There is
    opportunity for improvement, there is opportunity for contributing in
9   life in a significant way other than from the inside of prison.  With
    that statement, we will submit it."  In imposing the stipulated
10  sentence, the court observed that defendant would be eligible for
    parole at a comparatively young age if he were an "exemplary
11  inmate" in prison.

12  [Cal. App. Op. at 5-6 (all statutory citations, unless otherwise stated, are to the

    California Penal Code).]
13
14          Tyler appealed to the California Court of Appeal, Third Appellate Division,

15  which affirmed his conviction and sentence in an unpublished opinion on January

16  9, 2006.  [Lodged Doc. 4.]  On March 22, 2006, Tyler's petition for review by the

17  California Supreme Court was denied.  [Lodged Doc. 6.]

18          Tyler filed the present petition on February 23, 2007.  On April 16, 2007,

19  Judge Edmund F. Brennan of the Eastern District of California ordered respondent

20  to answer the petition.  Respondent's answer was filed on June 14, 2007.  Tyler

21  filed a traverse on August 15, 2007.  On December 9, 2008, the case was

22  reassigned to me.

23          The petition is governed by Title 28, United States Code section 2254, as

24  amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).

25  Section 2254(a) provides that a district court may entertain an application for writ

26  of habeas corpus "only on the ground that [the state prisoner] is in custody in

4

1   violation of the Constitution or laws or treaties of the United States."  28 U.S.C. §

2   2254(a).

3       To obtain federal habeas relief, Tyler must satisfy either section 2254(d)(1)

4   or section 2254(d)(2).  *See Williams v. Taylor*, 529 U.S. 362, 403 (2000).  As

5   amended, 28 U.S.C. § 2254(d) provides that:

6       (d) An application for a writ of habeas corpus on behalf of a person in
        custody pursuant to the judgment of a State court shall not be granted
7       with respect to any claim that was adjudicated on the merits in State
        court proceedings unless the adjudication of the claim--

8
        (1) resulted in a decision that was contrary to, or involved an
9       unreasonable application of, clearly established Federal law, as
        determined by the Supreme Court of the United States; or

10
        (2) resulted in a decision that was based on an unreasonable
11      determination of the facts in light of the evidence presented in
        the State court proceeding.

12

13  28 U.S.C.A. § 2254(d)(1)-(2).  The Supreme Court interprets section 2254(d)(1) as

14  follows:

15      Under the "contrary to" clause, a federal habeas court may grant the
        writ if the state court arrives at a conclusion opposite to that reached
16      by this Court on a question of law or if the state court decides a case
        differently than this Court has on a set of materially indistinguishable
17      facts.  Under the "unreasonable application" clause, a federal habeas
        court may grant the writ if the state court identifies the correct
18      governing legal principle from this Court's decisions but
        unreasonably applies that principle to the facts of the prisoner's case.

19

20  *Williams*, 529 U.S. at 412-13.

21      The deferential standard of review under AEDPA requires "that state-court

22  decisions be given the benefit of the doubt."  *Woodford v. Visciotti*, 537 U.S. 19,

23  24 (2002).  A district court generally gives deference to state court findings of

24  facts and presumes them to be correct.  28 U.S.C. § 2254(e)(1).  Federal courts

25  may address errors of state law only if they rise to the level of a constitutional

26  violation.  *Oxborrow v. Eikenberry*, 877 F.2d 1395, 1400 (9th Cir. 1989).  Federal

1 courts are bound by the states' interpretations of their own laws. *Estelle v.*

2 *McGuire*, 502 U.S. 62, 68 (1991); *Himes v. Thompson*, 336 F.3d 848, 852 (9th Cir.

3 2003).

4      Where there is no reasoned decision from the state's highest court, the

5 district court "looks through" to the last reasoned state court decision. *Ylst v.*

6 *Nunnemaker*, 501 U.S. 797, 801 (1991); *Van Lynn v. Farmon*, 347 F.3d 735, 738

7 (9th Cir. 2003).  If the dispositive "state court order does not furnish a basis for its

8 reasoning," a federal habeas court must conduct an independent review of the

9 record to determine whether the state court's decision is contrary to, or an

10 unreasonable application of, clearly established Supreme Court law. *Delgado v.*

11 *Lewis*, 223 F.3d 976, 981-82 (9th Cir. 2000); *Himes*, 336 F.3d at 853.

12 Adjudications by state intermediate appellate courts and trial courts are entitled to

13 the same AEDPA deference given to the state supreme court. *Medley v. Runnels*,

14 506 F.3d 857, 863 (9th Cir. 2007) (en banc).  Here, the last reasoned state court

15 decision is that of the California Court of Appeal, Third Appellate District.

16 [Lodged Doc. 4.]

**II.**

18      Tyler's main contention in his petition is that his sentence is so

19 disproportionate to his crime as to constitute cruel and unusual punishment in

20 violation of the Eighth Amendment to the United States Constitution and/or of the

21 California Constitution.  Warden Adams argues that, as a threshold matter, Tyler

22 cannot appeal the constitutionality of his sentence because he waived his right to

23 appeal at the time he entered his guilty plea.  [Response at 10-15.]  Tyler counters

24 that his waiver of appellate rights was not valid because although he "did

25 generally waive his right to appeal," he did not knowingly and intelligently waive

26 his right to challenge the constitutionality of his sentence; alternatively, Tyler

1   argues that if his waiver was valid, then he was denied the effective assistance of

2   counsel because his counsel should have adequately raised and preserved for

3   appeal such a constitutional challenge.

4       I turn first to the threshold issue of Tyler's waiver, and the attendant

5   question of effective assistance of counsel.  First, the waiver was valid under

6   California law.  The California Supreme Court, in *People v. Panizzon*, 13 Cal. 4th

7   68 (Cal. 1996), dealt with a defendant who sought to attack his sentence imposed

8   pursuant to a plea bargain.  The court held that the defendant was barred from

9   challenging the negotiated sentence because the terms of the plea bargain

10  prohibited such a challenge.  *Id.* at 79-80.  The court held that a defendant may

11  waive the right to appeal as part of a plea agreement, and such a waiver (whether

12  oral or in writing) is enforceable as long as it is "knowing, intelligent, and

13  voluntary."  *Id.* at 80.  The court held that the waiver in that case was knowing,

14  intelligent and voluntary where, "[e]ven though the trial court did not admonish

15  defendant regarding the right to appeal," the defendant had represented, in the

16  waiver and plea agreement signed by defendant and his attorney, that "he

17  understood the sentence that would be imposed if he pleaded no contest, that he

18  had discussed with his attorney both the paragraph specifying the sentence to be

19  imposed and the paragraph containing the waiver of the right to appeal the

20  sentence, and that he fully understood all matters set forth in the document without

21  exception."  *Id.* at 84.  Moreover, the waiver and plea agreement contained a

22  representation by defendant's counsel that "he personally went over the document

23  with defendant and concurred in defendant's decision to waive the rights specified

24  in the document, as well as counsel's stipulation that the trial court could consider

25  the document as evidence of defendant's intelligent waiver of such rights."  *Id.*

26  Finally, at the court hearing, both defendant and his attorney attested to the

1  document's valid execution, and the in-court questioning of defendant and his

2  attorney raised no doubts as to defendant's understanding of his rights and the

3  consequences of his no contest plea. *Id.*

4      In Tyler's case, there was no written plea agreement, but the California

5  Court of Appeal observed that:

6      Prior to waiver of defendant's constitutional rights and the right to
   appeal, the court asked defense counsel whether he had explained to
7      defendant all of his rights, including the right to appeal. Counsel
   responded that he had. The court then asked whether counsel
8      believed that defendant "understands all of these matters?" Counsel
   responded affirmatively. The court asked defendant whether he had
9      "thoroughly discussed the impact of this plea and admission with
   your attorney," to which defendant responded, "Yes." The court then
10     asked defendant, "Do you now specifically waive any and all
   appellate rights that you have with regard to pleas that you've just
11     entered in the sentence that would be imposed?" Defendant again
   replied: "Yes." The court found a factual basis for the pleas and
12     admissions, and that both the pleas and waiver were made knowingly,
   intelligently and voluntarily.

13

14  [Cal. App. Op. at 7-8; *see also* Reporter's Transcript on Appeal, June 17, 2004

15  (Entry of Plea) at 5-11.]  This case presents all of the elements that made up a

16  valid waiver in *Panizzon*: Tyler indicated that he understood the sentence that

17  would be imposed pursuant to his plea, that he had discussed with his attorney the

18  implications of his plea, and that nothing was said in court that would have shed

19  any doubt on whether he understood the rights he was waiving. *Panizzon* also

20  rejected an argument that the issue of disproportionality of the sentence was an

21  "unforeseen or unknown error" at the time of the waiver, reasoning that "the

22  sentence imposed by the court was neither unforeseen nor unknown at the time

23  defendant executed the Waiver and Plea agreement. Moreover, the essence of

24  defendant's claim is that his sentence is disproportionate to his level of culpability

25  . . ., a factor that also was known at the time of the plea and waiver." *Id.* at 86.

26

1       Alternatively, Tyler argues that if the waiver was valid, he was denied the

2   effective assistance of counsel.  To demonstrate ineffective assistance of counsel,

3   Tyler must show (a) that his counsel's performance was deficient, and (b) that the

4   deficient performance prejudiced him.  *Strickland v. Washington*, 466 U.S. 668,

5   687 (1984).  Counsel is "presumed to have rendered adequate assistance and made

6   all significant decisions in the exercise of reasonable professional judgment."  *Id.*

7   at 690.  Counsel's performance must fall "outside the wide range of professionally

8   competent assistance" before it may be deemed deficient.  *Id.*  To demonstrate

9   prejudice, Tyler must show that "counsel's constitutionally ineffective

10  performance affected the outcome of the plea process."  *Hill v. Lockhart*, 474 U.S.

11  52, 59 (1985).  "In other words, in order to satisfy the 'prejudice' requirement, the

12  defendant must show that there is a reasonable probability that, but for counsel's

13  errors, he would not have pleaded guilty and would have insisted on going to

14  trial."  *Id.* (footnote omitted).  Tyler fails to show either a constitutionally deficient

15  performance or prejudice.  Tyler argues that there was "no tactical reason for

16  presenting mitigation evidence and then also waiving any right to challenge the

17  sentence."  However, as the California Court of Appeal pointed out, there was a

18  tactical benefit to stipulating to a specified sentence and waiving appeal rights;

19  Tyler obtained dismissal of other counts and enhancements (including counts of

20  burglary; unlawful violation of the personal liberty of another by violence,

21  menace, fraud or deceit; robbery; vehicle theft; six counts of willful and unlawful

22  touching; and as to all but the burglary count, a possible enhancement for use of a

23  deadly or dangerous weapon), which could have resulted in a longer sentence if

24  sentences for those other counts had been imposed consecutively.  [Cal. App. Op.

25  at 10 n.2.]  Moreover, Tyler does not even attempt to argue that if he had

26

9

1    understood that his counsel's decisions would result in a waiver of his right to

2    appeal the constitutionality, he would have insisted on going to trial.

3        Even assuming arguendo that Tyler's waiver does not bar his appeal of the

4    constitutionality of his sentence, his disproportionality argument fails on its

5    merits.  "The Eighth Amendment, which forbids cruel and unusual punishments,

6    contains a narrow proportionality principle that applies to noncapital sentences."

7    *Ewing v. California*, 538 U.S. 11, 20 (2003) (internal quotation marks and

8    citations omitted).  However, the Supreme Court has admitted that "our precedents

9    in this area have not been a model of clarity. . . . [I]n determining whether a

10   particular sentence for a term of years can violate the Eighth Amendment, we have

11   not established a clear or consistent path for courts to follow."  *Lockyer v.*

12   *Andrade*, 538 U.S. 63, 72 (2003).  The Supreme Court has described the "one

13   governing legal principle" that has been "clearly established" as follows: "A gross

14   disproportionality principle is applicable to sentences for terms of years."  *Id.*  The

15   "precise contours of [the "gross disproportionality" standard] are unclear," but it is

16   generally held that the standard will apply "only in the 'exceedingly rare' and

17   'extreme' case."  *Id.* at 73 (citing *Harmelin v. Michigan*, 501 U.S. 957, 1001

18   (1991)).  Those are the only principles that are amenable to the "contrary to" or

19   "unreasonable application of" framework used in habeas cases like this one.  *Id.* at

20   73.

21       I hold here that the California Court of Appeal did not "appl[y] a rule that

22   contradicts the governing law" set forth by the Supreme Court, and it did not

23   "confront[] a set of facts that are materially indistinguishable from" a Supreme

24   Court decision and arrive at a different result than the Supreme Court.  *Id.*  In

25   *Ewing*, the Supreme Court held that a sentence of 25 years to life, under a "three-

26   strikes" recidivism statute, was not unconstitutionally disproportionate to his

1 offense of a theft of three golf clubs, worth a total of about $1,200.  Three

2 members of the court reasoned that the penalty was not "grossly disproportionate,"

3 *id.* at 30-31, while two other members of the court concurred in the judgment on

4 the ground that the proportionality principle is incapable of intelligent judicial

5 application.  *Id.* at 31-32 (Scalia, J., concurring in judgment; Thomas, J.,

6 concurring in judgment).  In *Lockyer*, the Court held that an affirmance of two

7 consecutive terms of 25 years to life in prison for a "three-strikes" conviction

8 involving theft of videotapes worth less than $155 was not contrary to or an

9 unreasonable application of clearly established law.  538 U.S. at 77.  In *Rummel v.*

10 *Estelle*, the Court held that a mandatory life sentence (with possibility of parole)

11 for a conviction for felony theft pursuant to a recidivism statute did not constitute

12 cruel and unusual punishment.  445 U.S. 263, 284-85 (1980).  In *Hutto v. Davis*, a

13 sentence of two consecutive terms of 20 years for possession with intent to

14 distribute and distribution of marijuana was held constitutional.  454 U.S. 370, 374

15 (1982).  *Harmelin* upheld a mandatory sentence of life in prison without the

16 possibility of parole for a first-time offender convicted of possessing 672 grams of

17 cocaine, although the Court did not agree on the reasoning.  501 U.S. 957.  The

18 foregoing precedents demonstrate that the Supreme Court has upheld similar or

19 even more severe sentences than that imposed on Tyler for crimes that are not

20 clearly of a categorically more severe nature than Tyler's.  Moreover, *Harmelin*

21 upheld a life sentence without the possibility of parole for a defendant who was,

22 like Tyler, a first-time offender.  I conclude that the California Court of Appeal did

23 not misapply Supreme Court precedent in holding that Tyler's sentence was not

24 "grossly disproportionate" to his crimes. [Cal. App. Op. at 19.]

25      The only recent case in which the Supreme Court struck down a sentence as

26 unconstitutional is distinguishable from Tyler's case.  In *Solem v. Helm*, the

11

1   defendant had been sentenced to life without possibility of parole after a

2   conviction for "uttering a 'no account' check for $100," pursuant to a recidivism

3   statute.  463 U.S. 277 (1983),  In stark contrast to Tyler's offense, in *Solem* all of

4   the defendant's prior offenses "were nonviolent and none was a crime against a

5   person."  *Id.* at 297.  This is not a case where the California Court of Appeal

6   confronted facts that were "materially indistinguishable" from a Supreme Court

7   precedent.  Moreover, Tyler's petition urges that a court must consider his young

8   age (19) at the time of the offense, but the case he cites in support of that

9   proposition, *Thompson v. Oklahoma*, 487 U.S. 815 (1988), involves a capital

10  sentence.  The Supreme Court has held that such mitigating factors have a place in

11  Eighth Amendment analysis of imposition of the death penalty, but has expressly

12  declined to extend such required "individualized" sentencing to other types of

13  penalties, even life in prison without parole.  *Harmelin*, 501 U.S. at 995.  The fact

14  that a victim did not suffer permanent physical injury is similarly not a factor that

15  has been considered by the Supreme Court in weighing the proportionality of a

16  prison term; rather, as noted above, Supreme Court precedent has considered

17  whether the offense or offenses were violent.  Tyler's acts were apparently

18  premeditated as observed by the California Court of Appeal [Cal. App. Op. at

19  14-15] and undeniably violent; he was convicted of penetrating his victim with a

20  foreign object, with enhancements for binding his victim and committing the

21  crime during a burglary.

22      Finally, to the extent that Tyler also argues his sentence violated the

23  California Constitution's prohibition on cruel and unusual punishment, "it is not

24  the province of a federal habeas court to reexamine state-court determinations on

25  state-law questions.  In conducting habeas review, a federal court is limited to

26  deciding whether a conviction violated the Constitution, laws, or treaties of the

12

1  United States." *Estelle*, 502 U.S. at 67-68; *see also* 28 U.S.C. § 2254(a)

2  (authorizing federal courts to entertain petitions for a writ of habeas corpus "only

3  on the ground that he is in custody in violation of the Constitution or laws or

4  treaties of the United States").

5      In sum, I hold that the California Court of Appeal's decision was not

6  "contrary to" or "an unreasonable application of" clearly established Supreme

7  Court precedent in holding that Tyler's sentence of 25 years to life in prison was

8  not grossly disproportionate to his crime, and I hold that this is not one of the

9  "extraordinary" cases that establishes a constitutional violation of the gross

10 disproportionality principle of the Eighth Amendment. *Andrade*, 538 U.S. at 77.

11 Tyler's petition for a writ of habeas corpus is denied.

12

13 DATED: March 22, 2010                    __/s/J. Clifford Wallace_____
                                            J. Clifford Wallace
14                                          United States Circuit Judge

15

16

17

18

19

20

21

22

23

24

25

26